

**Tagged for Publication**

**ORDERED in the Southern District of Florida on September 19, 2011.**

**John K. Olson, Judge**
**United States Bankruptcy Court**

_____

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Fort Lauderdale Division**
**www.flsb.uscourts.gov**

**In re**:

       Christina **Quiros-Amy,**

             Debtor.

_____/

Case No. 10-48463-JKO

Chapter 13

**In re**:

       Sergio **Contreras,**

             Debtor.

_____/

Case No. 10-43534-JKO

Chapter 13

**Memorandum Opinion & Order**

These cases present the issue of whether Chapter 13 debtors may strip wholly unsecured junior mortgage liens on principal residences despite being ineligible for discharge.[1]  Resolution of this issue rests on the interplay between 11 U.S.C. § 1325(a)(5) and 11 U.S.C. § 506.

---

[1] Both debtors are ineligible for Chapter 13 discharge because they each received Chapter 7 discharges within four years preceding their Chapter 13 filings.

[1]

For the reasons below, the court finds that Debtors who are ineligible for Chapter 13 discharge may not use Chapter 13 to strip liens.

## I.    PROCEDURAL BACKGROUND

### a.  Quiros-Amy

Christina Quiros-Amy ("Quiros") filed a Chapter 7 Voluntary Petition on June 18, 2009 and received a Chapter 7 discharge on September 23, 2009.[2]  She then filed the above-styled Chapter 13 case on December 20, 2010.[3]

On January 31, 2011, Quiros filed a Motion to Value and Determine Secured Status of Lien on Real Property Held by JP Morgan Chase.[4]   Her motion was granted on March 14, 2011,[5] and that order:

(1)    adjudged the value of Quiros' real property located at 5388 Northwest 126 Drive, Coral Springs, Florida 33076 to be **$202,850.00**;

(2)    found that JPMorgan Chase's lien is junior to other liens securing claims totaling **$275,000.00**;

(3)    accordingly found that the equity remaining in the property after satisfaction of all senior liens is **$0.00**; found JPMorgan Chase to have no secured claim against the bankruptcy estate; and provided that, if Chase were to timely file a proof of claim, the claim would be allowed as a general unsecured claim against the estate.

Decretal paragraph three of the Order Granting Motion to Value further held that Chase's recorded lien against the property "shall be deemed void and shall be extinguished automatically, without further order of the court, **upon entry of Debtor's discharge**."[6]  Decretal paragraph six

---

[2] No. 09-22246-JKO (Bankr. S.D. Fla.).

[3] No. 10-48463-JKO (Bankr. S.D. Fla.).

[4] *See* [Q. ECF No. 16] (citations to docket entries in the Quiros-Amy case (10-48463) are styled "Q. ECF No." and citations to docket entries in the Contreras case (10-43534) are styled "C. ECF No.")

[5] *See* [Q. ECF No. 34].
[6] *See* [Q. ECF No. 34], ¶ 3 (emphasis added).

held that the Order Granting Motion to Value "is not recordable or enforceable **until the debtor receives a discharge in this Chapter 13 case**." [7]

### b. Contreras

Sergio Contreras ("Contreras") filed a Chapter 7 Voluntary Petition on March 30, 2010 and received a Chapter 7 discharge on August 9, 2010. [8] He then filed the above-styled Chapter 13 case on October 29, 2010.[9]

On January 12, 2011, Contreras filed a Motion to Value and Determine Secured Status of Lien on Real Property Held by Citibank.[10] Contreras' motion was granted on March 4, 2011,[11] and that order:

(1)     adjudged the value of Contreras' real property located at 960 Southwest 28 Street, Fort Lauderdale, Florida 33315, to be **$87,250.00**;

(2)     found that Citibank's lien is junior to other liens securing claims totaling **$127,107.32**;

(3)     accordingly found that the equity remaining in the property after satisfying all senior liens is **$0.00**; found Citibank to have no secured claim against the estate; and provided that, if Citibank were to timely file a proof of claim, it would be allowed as a general unsecured claim against the estate.

Decretal paragraph three of the Order Granting Motion to Value further held that Citibank's recorded lien against the property "shall be deemed void and shall be extinguished automatically,

---

[7] *Id.* at ¶ 6 (emphasis added).

[8] No. 10-18197-RBR (Bankr. S.D. Fla.).

[9] No. 10-43534-JKO (Bankr. S.D. Fla.).

[10] *See* [C. ECF No. 19] (citations to docket entries in the Quiros-Amy case (10-48463) are styled "Q. ECF No." and citations to docket entries in the Contreras case (10-43534) are styled "C. ECF No.").

[11] *See* [C. ECF No. 38].

[3]

without further order of the Court, **upon entry of Debtor's discharge**." [12]  Decretal paragraph six held that the Order Granting Motion to Value "is not recordable or enforceable **until the debtor receives a discharge**." [13]

### c.  The Motions to Amend

On June 10, 2011, both Quiros and Contreras filed identical motions seeking to amend the orders granting their motions to value. [14]  Their Motions to Amend ask the court to replace the text of the third decretal paragraphs, *supra*, with: "**upon completion of the Chapter 13 plan and without entry of the debtor's discharge in this chapter 13 case**." [15]  The debtors further seek to replace the text of the sixth decretal paragraphs, *supra*, with: "**this Order is recordable and enforceable upon completion of the Chapter 13 plan and without the debtor receiving a discharge in this chapter 13 case**." [16]

### II.    "CHAPTER 20"

Prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), a debtor was eligible to receive a Chapter 13 discharge upon completion of plan payments regardless of whether a prior discharge was received in a previous bankruptcy case. *In re Jarvis*, 390 B.R. 600, 604 (Bankr. C.D. Ill. 2008).  BAPCPA added § 1328(f) to the Bankruptcy Code, which provides that "the court shall not grant a discharge . . . if the debtor has received a discharge . . . in a case filed under chapter 7, 11, or 12 of this title during the 4-year period preceding the date of the order for relief under this chapter."  However, § 1328(f) "does

---

[12] *See* [C. ECF No. 38], ¶ 3.
[13] *Id.* at ¶ 6.
[14] *See* [Q. ECF No. 62]; [C. ECF No. 55] (hereinafter, the "Motions to Amend").
[15] Motions to Amend, at 2.
[16] *Id.*

[4]

not restrict a debtor's eligibility to file a Chapter 13 case and obtain confirmation of a plan which otherwise complies with the Code." *Jarvis*, 390 B.R. at 605 (citing *In re Bateman*, 515 F.3d 272 (4th Cir. 2008); *In re Lewis*, 339 B.R. 814 (Bankr. S.D. Ga. 2006); *In re McGhee*, 342 B.R. 256 (Bankr. W.D. Ky. 2006); *In re Sanders*, 368 B.R. 634 (Bankr. E.D. Mich. 2007)). "Chapter 20" cases (where a debtor's prior Chapter 7 discharge bars Chapter 13 discharge) accordingly raise a number of questions regarding whether a petition and/or plan is filed in good faith under § 1325(a)(3), (a)(7) and whether lien stripping is appropriate.

### III.    LIEN STRIPPING IN CHAPTER 13 VERSUS "CHAPTER 20" CASES

The Bankruptcy Code provides a clear framework for determining the extent to which a claim is secured:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

11 U.S.C. § 506(a)(1). In other words, "a claim's status as a secured claim, and the amount of the secured claim, depends upon the value of the property to which the lien in question attaches, and the amount of any senior liens." *In re Tran*, 431 B.R. 230, 234 (Bankr. N.D. Cal. 2010). "[T]o the extent that a lien does not attach to any value, it is void." *Id.*

Modification of a creditor's lien in bankruptcy is commonly known as "lien stripping." Two varieties of lien stripping exist. The first, known as a "strip-down," is where the secured portion of a lienholder's claim is reduced to the value of its interest in the collateral. The second, known as a "strip-off," involves the complete removal of a creditor's lien. A strip-off occurs when the value of collateral is consumed entirely by senior liens, such that the junior lienholder's

claim is wholly unsecured.  Because there is no equity left to secure the junior lienholder's claim, that lien is voided or "stripped-off."  *See* 11 U.S.C. § 506(d) ("To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void").

While § 506 empowers a debtor to propose a lien stripping plan, there are limitations on a debtor's ability to "strip down" or "strip off."  First, § 506(d) cannot be used in concert with section 506(a) bifurcation to strip a lien in a Chapter 7 liquidation. *In re Gerardin*, 447 B.R. 342, 345 (Bankr. S.D. Fla. 2011) (Cristol, Mark, & Isicoff, JJ.) (citing *Dewsnup v. Timm*, 502 U.S. 410, 417 (1992) ("[T]he creditor's lien stays with the real property until the foreclosure.")); *compare Dewsnup*, 502 U.S. at 414 ("Petitioner-debtor takes the position that §§ 506(a) and 506(d) are complementary and to be read together") *with Dewsnup,* 502 U.S. at 417 ("We conclude that respondents' alternative position . . . generally is the better of the several approaches").  Second, the Supreme Court's lien stripping prohibition extends only to Chapter 7 liquidation and does not block lien stripping in reorganization. *Dewsnup*, 502 U.S. at 416-417 (confining the Court's holding to Chapter 7); *In re Tran*, 431 B.R. at 234 ("*Dewsnup*, however, is inapplicable to chapter 13.").  Instead, Chapter 13 contains its own limitations on lien stripping which can generally be divided categorically into (1) limitations regarding a debtor's principal residence and (2) limitations giving rise to confirmation issues.

### a.    A Chapter 13 Debtor May Strip a Wholly Unsecured Junior Mortgage Lien on the Debtor's Principal Residence.

A Chapter 13 debtor may "[m]odify the rights of holders of secured claims," but may not do so if the creditor's claim is "secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322.  The Supreme Court has held that:

> to give effect to § 506(a)'s valuation and bifurcation of secured claims through a Chapter 13 plan . . . would require a modification

> of the rights of the holder of the security interest. Section 1322(b)(2) prohibits such a modification where . . . the lender's claim is secured only by a lien on the debtor's principal residence.

*Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 332 (1993); *see also id.* at 325-26 ("§ 1322(b)(2) prohibits a Chapter 13 debtor from relying on § 506(a) to reduce an undersecured homestead mortgage to the fair market value of the mortgaged residence").    Following *Nobelman*, it became well settled that § 1322(b)(2) blocks modification of claims secured by liens on a debtor's principal residence. *Tanner v. FirstPlus Fin., Inc. (In re Tanner)*, 217 F.3d 1357, 1358 (11th Cir. 2000) ("Section 1322(b)(2) permits a Chapter 13 debtor's plan to modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence."); *Gerardin*, 447 B.R. at 345 ("a chapter 13 debtor may not strip down a lien secured solely by a debtor's principal residence").

The anti-modification holding of *Nobelman* was less clear, however, in cases where a junior lien on a debtor's principal residence did not attach to any value.  Courts debated whether such a junior lien could be "stripped off," but that issue was eventually resolved as well. *See Tran*, 431 B.R. at 234 ("Thus, notwithstanding *Nobelman* and § 1322(b)(2), a chapter 13 debtor may utilize § 506(a) and (d) to strip off a lien on the debtor's principal residence, if the lien is completely unsecured based on the value of the residence and the amount of any senior liens").  The "strip off" of junior liens which do not attach to any value has been authorized by the majority of courts facing the issue, including the Eleventh Circuit. *Tanner*, 217 F.3d at 1359-1360; *see also In re Dickerson*, 222 F.3d 924 (11th Cir. 2000) (disagreeing with the *Tanner* panel which originally decided the issue, but following *Tanner* as established precedent in the circuit); *Pond v. Farm Specialist Realty (In re Pond)*, 252 F.3d 122 (2d Cir. 2001); *McDonald v. Master Fin. Inc. (In re McDonald)*, 205 F.3d 606, 611-12 (3d Cir. 2000), *cert. denied*, 531 U.S.

[7]

822 (2000); *Bartee v. Tara Colony Homeowners Assoc. (In re Bartee)*, 212 F.3d 277 (5th Cir. 2000); *Lane v. W. Interstate Bancorp (In re Lane)*, 280 F.3d 663 (6th Cir. 2002); *Zimmer v. PSB Lending Corp. (In re Zimmer)*, 313 F.3d 1220 (9th Cir. 2002).  Although it is clear that debtors who are eligible for Chapter 13 discharge may strip wholly unsecured junior liens on their principal residences, courts still debate whether this kind of lien stripping is available to debtors who are ineligible for Chapter 13 discharge. *See, e.g., In re Fisette*, 2011 Bankr. LEXIS 3178, at *19 (B.A.P. 8th Cir. Aug. 29, 2011) ("We hold that the strip off of a wholly unsecured lien on a debtor's principal residence is effective upon completion of the debtor's obligations under his plan, and it is not contingent on his receipt of a Chapter 13 discharge"); *In re Jennings*, 2011 Bankr. LEXIS 2693, 2011 WL 2909888 (Bankr. N.D. Ga. July 11, 2011) ("For the reasons set forth herein, the Court finds that if the plan is filed in good faith, a chapter 20 debtor may strip off such a lien in a chapter 13 plan [even if ineligible for discharge]"); *Gerardin*, 447 B.R. at 345 ("a chapter 13 debtor may not strip down a lien secured solely by a debtor's principal residence").

> **b.    A "Chapter 20" Debtor May Not Strip a Wholly Unsecured Junior Mortgage Lien on the Debtor's Principal Residence.**

11 U.S.C. § 1325 governs confirmation of a Chapter 13 plan.  Subsection (a)(5) provides that the court shall not confirm a plan unless:

> with respect to each allowed secured claim provided for by the plan –
>
> (A) the holder of such claim has accepted the plan;
>
> (B)(i) the plan provides that –
>
> (I) the holder of such claim retain the lien securing such claim until the earlier of –

[8]

(aa) the payment of the underlying debt determined under nonbankruptcy law; or

(bb) **discharge under section 1328**; and

(II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankrutpcy law.

11 U.S.C. § 1325(a)(5) (emphasis added). Subsection § 1325(a)(5)(B)(i)(I)(bb), emphasized above, has caused a split of interpretation among courts throughout the country. Two bankruptcy courts in the Eleventh Circuit have recently reached opposing conclusions. *Compare Gerardin*, 447 B.R. at 352 ("If there is no value securing a claim, the unsecured claim must be treated (and treatable) in a plan. That can no longer be done here because the Debtors' unsecured debts have been discharged in their prior chapter 7 cases."); *with In re Jennings*, No. 11-50570-CRM, 2011 Bankr. LEXIS 2693, at *1, 2011 WL 2909888 (Bankr. N.D. Ga. July 11, 2011) ("[I]f the plan is filed in good faith, a chapter 20 debtor may strip off such a lien in a chapter 13 plan [even if ineligible for discharge]").

The core of the dispute between the two interpretations is the language preceding § 1325(a)(5)(B)(i)(I)(bb): "with respect to each allowed secured claim provided for by the plan[.]" Courts holding that junior lien stripping is permissible in Chapter 20 cases look to 11 U.S.C. § 506(a), conclude that a junior lien becomes wholly unsecured when it does not attach to any value, and find that § 1325(a)(5)(B)(i)(I)(bb) does not apply to the wholly unsecured junior mortgage lien because the creditor does not have an "allowed secured claim." *See, e.g., Fisette*, 2011 Bankr. LEXIS 3178, at *21-22. Courts holding that junior lien stripping is barred in Chapter 20 cases scoff at the idea that such a junior lienholder can have an unsecured claim in the subsequent Chapter 13 case because:

[9]

(1)     the debtor's *in personam* liability was discharged in the prior Chapter 7 case;

(2)     the junior lienholder continues to have a claim, enforceable only against the debtor's property, and this claim is "a claim against the debtor" for purposes of the Bankruptcy Code which may be treated in a Chapter 13 plan;

(3)     the junior lienholder's claim in the subsequent Chapter 13 case is enforceable against property of the debtor such that is cannot be disallowed under 11 U.S.C. § 502(b)(1); and

(4)     since the junior lienholder's claim cannot be an unsecured claim and cannot be disallowed under 11 U.S.C. § 502(b)(1), it must be an "allowed secured claim" unless some other basis for claim disallowance exists.

*See, e.g., Gerardin,* 447 B.R. 346-47 (citing *Johnson v. Home State Bank*, 501 U.S. 78 (1991), for the proposition that "a creditor who . . . has a claim enforceable only against the debtor's property nonetheless has a 'claim against the debtor' for purposes of the Code" and citing 11 U.S.C. § 502(b)(1) for the proposition that such claims are allowed unless they are "unenforceable against the debtor *and property of the debtor*").

Courts which permit Chapter 20 lien stripping emphasize the current text of the Code. The court in *Geradin* dug deeper, looking to pre-BAPCPA practice, legislative intent, and policy considerations.  Reflecting on the pre-BAPCPA question of "whether a secured creditor whose lien was reduced under § 506(a) retained the lien until the end of a plan," *Gerardin* explained that this was "resolved in BAPCPA by amendments to § 1325(a)(5) and § 348." *Id.* at 351. Specifically quoting the BAPCPA-enacted subsection (C)(i) of § 348(f)(1),[17] the court deduced: "This change makes it clear that lien strips are ineffective upon conversion of a chapter 13 case to chapter 7." *Id.*  The court further reasoned: "The language added to § 1325(a)(5) in BAPCPA is consistent with and works in tandem with § 348 by clarifying that the lien existing on the filing

---

[17] "With respect to cases converted from chapter 13 – (i) the claims of any creditor holding security as of the date of the petition shall continue to be secured by that security unless the full amount of such claim determined under applicable nonbankruptcy law has been paid in full as of the date of conversion, notwithstanding any valuation or determination of the amount of an allowed secured claim made for the purposes of the case under chapter 13." 11 U.S.C. § 348(f)(1)(C)(i).

[10]

date remains in place until the debt is discharged or paid in full . . . and by specifically providing that the lien on the petition date remains intact if the case is dismissed or converted . . . Thus, there is no doubt that Congress fully intended for lien strips . . . to be dealt with under § 1325(a)(5)." *Id.*; *see* 11 U.S.C. § 1325(a)(5)(B)(i)(II) ("if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankrutpcy law").   Courts which permit Chapter 20 lien stripping rely upon an absence of an explicit prohibition within the Code. *Geradin*, however, sees that silence as direction.   Referring to *Nobelman* and *Dewsnup*, *Geradin* notes that "Congressional intent favorable to secured creditors has been acknowledged with deference by the U.S. Supreme Court, which twice has entered decisions plainly designed to protect home lenders." *Geradin*, 447 B.R. at 351; *see also Dewsnup v. Timm*, 502 U.S. 410, 420 (1992) (" . . . given the ambiguity here, to attribute to Congress the intention to grant a debtor the broad new remedy . . . without the new remedy's being mentioned somewhere in the Code itself or in the annals of Congress is not plausible, in our view, and is contrary to basic bankruptcy principles").   Accordingly, reading § 1325(a)(5) to protect secured lenders by prohibiting lien stripping in non-discharge Chapter 13 cases would be consistent with the Supreme Court's views to date.

### IV.   CONCLUSION

Decisions which permit "Chapter 20" debtors to strip wholly unsecured junior liens on principal residences unconvincingly address the effect of prior Chapter 7 discharge on the classification of junior lienholders' claims.   The decisions generally look for a prohibition of Chapter 20 lien stripping in the Code, find none, see that collateral value is consumed by senior liens, and conclude that a junior lienholder's claim must be an unsecured claim against the

bankruptcy estate. *Fisette* and its predecessors conclude that § 1325(a)(5)(B)(i)(I)(bb) is inapplicable to the wholly unsecured junior lienholders because they do not hold "allowed secured claims." *See, e.g., Fisette*, 2011 Bankr. LEXIS 3178, at *21-22. But these cases analyze the issue as one would in a Chapter 13 case, not a Chapter 20 case. The very nature of a Chapter 20 case renders it impossible for the junior lienholder to have anything other than an "allowed secured claim" against the bankruptcy estate because:

(1)     the debtor's *in personam* liability was discharged in the prior Chapter 7 case;

(2)     the junior lienholder continues to have a claim, enforceable only against the debtor's property, and this claim is "a claim against the debtor" for purposes of the Bankruptcy Code which may be treated in a Chapter 13 plan, *see Home State Bank*, 501 U.S. at 80;

(3)     the junior lienholder's claim in the subsequent Chapter 13 case is enforceable against property of the debtor such that it cannot be disallowed under 11 U.S.C. § 502(b)(1); and

(4)     since the junior lienholder's claim cannot be an unsecured claim and cannot be disallowed under 11 U.S.C. § 502(b)(1), it must be an "allowed secured claim" unless some other basis for claim disallowance exists.

The junior lienholder's claim must accordingly be treated under 11 U.S.C. § 1325(a)(5) and the Debtors' Motions to Amend Orders [Q. ECF No. 62] & [C. ECF No. 55][18] are **DENIED.**

SO ORDERED.

# # #

*The Clerk of Court is directed to provide copies of this order*
*to all interested parties registered to receive notice.*

---

[18] Citations to docket entries in the Quiros-Amy case (10-48463) are styled "Q. ECF No." and citations to docket entries in the Contreras case (10-43534) are styled "C. ECF No."